UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| PAM SMITH, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Case No. 1:15-cv-10-JTM-SLC |
|  | ) |  |
| PHH MORTGAGE CORPORATION | ) |  |
| d/b/a PHH Mortgage Services, | ) |  |
| and NATIONWIDE AFFINITY | ) |  |
| INSURANCE COMPANY, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## REPORT AND RECOMMENDATION

On May 7, 2015, Defendant Nationwide Affinity Insurance Company filed a Motion to Bifurcate and Stay Discovery, requesting separate trials on Plaintiff Pam Smith's claims of breach of contract and breach of the duty of good faith ("bad faith"), together with a stay of discovery on the bad faith claim. (DE 25). On June 9, 2015, District Court Judge James T. Moody entered an Order pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Northern District of Indiana Local Rule 72-1(b), referring Nationwide's motion to the undersigned Magistrate Judge for a Report and Recommendation. (DE 32).

For the following reasons, the undersigned Magistrate Judge will recommend that Nationwide's motion be DENIED.

*A. Factual and Procedural Background*

Smith filed this action against Defendants Nationwide and PHH Mortgage Corporation in DeKalb Superior Court on December 5, 2014, after a fire destroyed her home and Nationwide denied her insurance claim. (DE 3). Nationwide's denial was based, in part, on the "Intentional

Acts" exclusion and the "Concealment or Fraud" condition, placing the actions of Smith and her adult son at issue. (DE 26 at 2-4).

Smith's claims in this action are twofold: (1) that Nationwide's denial of coverage breached her insurance contract, and (2) that Nationwide acted in bad faith both in making the decision to deny her claim and in the manner in which it handled the claim.[1] (DE 3 at ¶¶ 10, 13-14). She demands a jury trial. (DE 3).

After PHH timely removed the case here (DE 1), the Court conducted a preliminary pretrial conference on February 26, 2015, setting a discovery deadline of March 12, 2016 (DE 20).

On March 24, 2015, Nationwide sought an extension of time to respond to Smith's First Set of Interrogatories and First Request for Production of Documents due to "the voluminous nature of the documents requested." (DE 22 at ¶ 3). The Court granted the motion (except with regard to Interrogatory No. 4), affording Nationwide an extension to April 21, 2015. (DE 24).

On May 7, 2015, Nationwide filed the instant motion (DE 25), contending that bifurcation of Smith's claims and a stay of discovery of the bad faith claim will promote judicial economy and avoid prejudice to Nationwide (DE 26). Smith objects, and the motion is now fully briefed. (DE 27, 31).

## B. Applicable Law

Federal Rule of Civil Procedure 42(b) provides: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial." "The appropriateness of bifurcating a trial

---

[1] The parties agree that Smith's claims are governed by Indiana law.

under Rule 42(b) is entirely within the trial court's discretion." *Balzer v. Am. Family Ins. Co.*, No. 2:08-cv-241, 2009 WL 1543524, at *2 (N.D. Ind. June 2, 2009) (citing *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999)).

"Like all rules of civil procedure, [Rule 42] is applied in conjunction with Federal Rule of Civil Procedure 1, which instructs that the rules shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." *Id.* (citation and internal quotation marks omitted); *see Jones v. Travco Ins. Co.*, No. 1:13-cv-1069, 2014 WL 1404726, at *2 (S.D. Ind. Apr. 9, 2014) ("Bifurcation . . . is expensive to the court as well as to the parties."). "It first must be determined whether separate trials either would avoid prejudice to a party or promote judicial economy and then whether bifurcation would unfairly prejudice a party." *Balzer*, 2009 WL 1543524, at *2. "Finally, a separation of trials may not violate the Seventh Amendment." *Id.* (citing *Houseman*, 171 F.3d at 1121). "The party seeking bifurcation has the burden of demonstrating that judicial economy would be served and that no party would be prejudiced by separate trials based on the case's circumstances." *Id.*; *see also Montgomery v. Am. Family Ins. Co.*, 3:09-cv-545, 2010 WL 1936085, at *2 (N.D. Ind. May 11, 2010).

### C. Discussion

Nationwide argues that bifurcating Smith's two claims and staying discovery on the bad faith claim will promote judicial economy for two reasons: (1) if Nationwide prevails on the breach of contract claim, then the bad faith claim fails as a matter of law; and (2) the discovery that Smith seeks on the bad faith claim has no relevance to the breach of contract claim and will lead to contentious discovery disputes. Nationwide also asserts that bifurcation will avoid juror confusion, prevent prejudice to Nationwide, and benefit Smith by expediting resolution of her

3

breach of contract claim. For the following reasons, Nationwide's arguments are not convincing.

1. Independence of Claims

As stated above, Nationwide contends that Smith's bad faith claim will fail as a matter of law if it prevails on the breach of contract claim. Smith disagrees; she argues that her bad faith claim is independent of her breach of contract claim because she is alleging that Nationwide acted in bad faith not only in refusing to pay her claim, but also in the "the manner in which it handled [her] claim." (DE 3 at ¶¶ 13-14). According to Smith, it is possible under Indiana law for her to prevail on the bad faith claim even if she were to lose on the breach of contract claim. (DE 27 at ¶ 3).

Having set the stage, the parties then debate whether a bad faith claim based on claim handling practices is recognized under Indiana law. Nationwide cites *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 519 (Ind. 1993), asserting that the Indiana Supreme Court restricted bad faith claims to "the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." In turn, Smith cites to *Monroe Guaranty Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 976 (Ind. 2006), contending that the Indiana Supreme Court later opened the door to a bad faith claim based on the "manner of handling the claim."

In *Magwerks*, the plaintiff's bad faith claim, like here, was based on the insurer's "manner of handling the claim." *Id*. But because neither party provided guidance on the issue, and because the plaintiff did not elaborate on the contours of this duty, the Indiana Supreme Court declined to expand the extent of an insurer's duty beyond that expressed in *Hickman*. *Id*. The

Court went on, however, to affirm the jury's conclusion that the insurer's conduct "amounted to 'an unfounded refusal to pay policy proceeds,'" one of *Hickman's* enumerated provisions. *Magwerks*, 829 N.E.2d at 977 (citing *Hickman*, 622 N.E. 2d at 519). The Court held: "[A] good faith dispute concerning insurance coverage does not automatically preclude a punitive damages claim for bad faith when coverage is denied." *Id*.

More recently, in *Klepper v. Ace American Ins. Co.*, 999 N.E.2d 86, 97 (Ind. Ct. App. 2014), an insurance dispute before the Indiana Court of Appeals, the insurer argued that the trial court's adoption of a special master's report on the coverage issue in the insurer's favor "necessarily dispose[d] of all of Klepper's claims." Klepper disagreed, arguing that "regardless of coverage, an insurer may breach the covenant of good faith in other ways than the wrongful denial of coverage, including, for example, its handling of the claim." *Id*.; *see HemoCleanse, Inc. v. Philadelphia Indem. Ins. Co.*, 831 N.E.2d 259, 264 n.2 (Ind. Ct. App. 2005) ("[A]n insurer may exhibit bad faith in, for example, its handling of the claim such that even if it engages in a good faith dispute over coverage it may still breach the covenant of good faith and fair dealing.").

The Court of Appeals viewed the holding in *Magwerks* consistent with the notion articulated in *Hickman* that "an insured who believes that an insurance claim has been wrongly denied may have available two distinct legal theories, one in contract and one in tort, each with separate, although often overlapping, elements, defenses and recoveries." *Klepper*, 999 N.E.2d at 98 (quoting *Hickman*, 622 N.E.2d at 520). As such, the Court of Appeals found the entry of a judgment on Klepper's bad faith claim would be premature. *Id*. ("Given the two distinct theories upon which [Klepper] seeks to recover and their separate elements and defenses, we cannot

5

conclude at this stage of the proceedings that the resolution of the contract dispute necessarily disposes of the tort-based bad faith claim.").

Here too, it would be premature at this stage of the proceedings to find that Smith's bad faith claim is entirely dependent on her breach of contract claim. Of course, Nationwide wants to stay discovery on the bad faith claim pending the outcome of Smith's coverage claim, asserting that she has no other grounds for bringing the bad faith claim. But without further discovery, Smith cannot possibly determine the strength of her bad faith claim. *Balzer*, 2009 WL 1543524, at *3; *see Jones*, 2014 WL 1404726, at *2 (denying a stay of discovery and motion to bifurcate, but granting leave to renew the motion to bifurcate after "development of the evidence relevant to bad faith").

Furthermore, it is "possible that the bad faith claim may be resolved, or narrowed, in the summary judgment context." *Jones*, 2014 WL 1404726, at *2 n.1; *see, e.g., Kolski v. Safeco Ins. Cos.*, 3:08-cv-416, 2010 WL 99063, at *5 (N.D. Ind. Jan. 5, 2010) (granting summary judgment on plaintiff's bad faith claim based on the insurer's "delay in decision-making and answering inquiries"—which plaintiff acknowledged did not fit squarely within the four enumerated provisions in *Hickman*—where the only facts supporting the claim were a few delays in returning phone calls and in considering options for the vehicle's repair); *Lummis v. State Farm Fire & Cas. Co.*, No. 1:04-cv-80, 2005 WL 1417053, at *12 (S.D. Ind. June 16, 2006) (granting partial summary judgment on plaintiff's bad faith claim in an arson case, noting that the parties agreed there were triable, disputed issues concerning the breach of contract claim).

In short, Nationwide fails to convince the Court that Smith's bad faith claim will fail as a matter of law if she loses on her breach of contract claim. Therefore, Nationwide has not

demonstrated through its first argument that bifurcation and a stay of discovery on the bad faith claim promotes judicial economy.

2. Relevance of Discovery

Next, Nationwide argues that the discovery Smith seeks on her bad faith claim has no relevance to the breach of contract claim and will lead to contentious discovery disputes. More particularly, it urges that a significant portion of Smith's First Request for Production—seeking Nationwide's claims manuals, training materials, employee incentive programs, and documents related to its efforts to increase profitability—is completely irrelevant to her breach of contract claim, which centers on whether Smith or her son caused or procured to cause the fire or breached the conditions precedent to coverage under the policy. (DE 26 at 2-4).

In support of its argument, Nationwide cites *Burton Wells, Ltd. v. Indian Harbor Ins. Co.*, No. 08 C 4946, 2009 WL 8463694, at *2 (N.D. Ill. July 13, 2009), in which the court ordered bifurcation and a stay, in part, on the basis the plaintiff had overstated the overlap in discovery between the claims and would not be prejudiced by proceeding first with its case on coverage. But *Burton Wells* was governed by Illinois, not Indiana, law. In fact, the first reason provided by the *Burton Wells* court in support of bifurcation and a stay (which Nationwide fails to mention) is that "[u]nder Illinois law, Plaintiff must first establish that it is entitled to coverage before it can prove that Defendant acted in bad faith." *Id*. That argument, however, has already been addressed *supra*.

Furthermore, "[t]he Seventh Circuit and district courts have held that in disputes concerning insurance coverage and bad faith claims, the issues often overlap and are inextricably intertwined." *Balzer*, 2009 WL 1543524, at *2 (collecting cases applying Indiana law); *see*

*McLaughlin v. State Farm Mut. Auto. Ins. Co.*, 30 F.3d 861, 871 (7th Cir. 1994) (stating in an arson case governed by Indiana law that "the evidence usually overlaps substantially" between the coverage and bad faith claims); *Jones*, 2014 WL 1404726, at *1; *Home Fed. Sav. Bank v. Ticor Title Ins. Co.*, No. 1:10-cv-999, 2010 WL 5126375, at *1 (S.D. Ind. Dec. 9, 2010); *Montgomery*, 2010 WL 1936085, at *2; *Williamson v. Progressive No. Ins. Co.*, 2007 WL 2176561, at *1 (S.D. Ind. 2007); *Lummis*, 2005 WL 1417053, at *9-11; *Trinity Homes, LLC v. Regent Ins. Co.*, No.1:04-cv-1920, 2006 WL 753125, at *2 (S.D. Ind. Mar. 20, 2006)). "And so the normal procedure is to try compensatory and punitive damages claims together with appropriate instructions to the jury."[2] *Montgomery*, 2010 WL 1936085, at *2 (citing *McLaughlin*, 30 F.3d at 871).

Moreover, Nationwide has "not attempted to demonstrate that the privileged nature of any documents will be compromised without a stay of discovery on the bad faith claim." *Jones*, 2014 WL 1404726, at *2. The documents that Smith seeks concerning the bad faith claim do pertain, at least in part, to Nationwide's proprietary and confidential business information (DE 26 at 11), but such information can be protected through a stipulated protective order.

Therefore, because there likely will be "at least some overlap in discovery relevant to both the [breach of contract] and bad faith claims and because it is extraordinarily inefficient for the court to divide the discovery into two wholly separate tracts," *Jones*, 2014 WL 1404726, at *2, the Court is not persuaded that bifurcation and a stay of discovery on the bad faith claim promotes judicial economy. *See Home Fed. Sav. Bank*, 2010 WL 5126375, at *1 (recognizing

---

[2] Notably, Nationwide cites cases from the Western District of Kentucky and the District of Nevada, not the Seventh Circuit, in support of its assertion that "[i]n cases such as this one, courts routinely grant bifurcation and stay of the bad-faith claim until the underlying breach-of-contract claim is resolved . . . ." (DE 26 at 4, 6).

"the strong judicial economy realized in trying both coverage and bad faith [claims] together").

   3. Prejudice

Nationwide also contends that bifurcation will avoid juror confusion, prevent prejudice to Nationwide, and benefit Smith by expediting resolution of her breach of contract claim. In that regard, Nationwide speculates that if the evidence is presented in a single trial, a jury may be influenced by "irrelevant evidence" about the bad faith claim, making it "difficult for a jury to render an unbiased decision on the breach-of-contract claim." (DE 26 at 12).

But "mere speculation that [Nationwide] might be prejudiced by certain testimony is an inadequate basis upon which to grant a separate trial." *Balzer*, 2009 WL 1543524, at *3; *see Montgomery*, 2010 WL 1936085, at *2 ("[The insurer's] naked assertion that it 'might' be prejudiced by certain testimony and defense tactics is an inadequate basis for bifurcation."); *Williamson*, 2007 WL 2176561, at *1 (same). The jury can be appropriately instructed to minimize any confusion, *see McLaughlin*, 30 F.3d at 871, and the Court is not persuaded that bifurcation will "benefit" Smith, as Nationwide contends. (DE 26 at 12-13). Indeed, Nationwide could have raised this issue in the Report of Parties' Planning Meeting and at the scheduling conference in February 2015, but instead waited until after Smith had served her first discovery requests, leading to a delay in the case. (DE 27 at 6-7).

As stated earlier, "the normal procedure is to try compensatory and punitive damage claims together."[3] *McLaughlin*, 30 F.3d at 871 (affirming the district court's denial of a motion

---

[3] Nationwide claims that "many Federal courts hold that bifurcation of a bad-faith claim is the proper solution to avoid juror confusion and the prejudice that will result if jurors were to hear and evaluate evidence of insurance coverage issues and bad faith simultaneously[,]" but again cites a string of cases from outside the Seventh Circuit in support. (DE 26 at 11 n.5).

9

to bifurcate breach of contract and bad faith claims in an arson case). As a Magistrate Judge from the Southern District of Indiana aptly summarized:

> Bifurcation . . . is expensive to the court as well as to the parties. This court is too busy and too stretched for resources to conduct two jury trials for the same litigation. It is not inclined to bifurcate claims for trial except in unusual circumstances and where it is convinced that a properly instructed jury still may be prone to misuse evidence relevant to bad faith as substitutes for proof of causation on the breach of contract claim.

*Jones*, 2014 WL 1404726, at *2. At this stage, Nationwide has failed to produce compelling evidence to vary from the normal procedure in the Seventh Circuit of trying the claims together.

Therefore, the undersigned Magistrate Judge will recommend that Nationwide's motion to bifurcate and stay discovery be DENIED. However, the Magistrate Judge will further recommend that Nationwide be allowed to raise the bifurcation issue again after the close of discovery and ruling on dispositive motions in the event discovery reveals proof of actual prejudice that Nationwide will suffer. *See, e.g.*, *Balzer*, 2009 WL 1543524, at *4; *Auto-Owners Ins. Co. v. C & J Real Estate, Inc.*, 996 N.E.2d 803, 806 n.2 (Ind. Ct. App. 2013) (granting plaintiff's motion to compel insurer to produce the requested discovery concerning bad faith, observing that the trial court could address the actual admissibility of the information at trial and that any possible juror confusion or resulting prejudice could be ameliorated by bifurcating the issues or giving an appropriate limiting instruction).

### *D. Conclusion*

For the foregoing reasons, the undersigned Magistrate Judge RECOMMENDS that Defendant Nationwide's Motion to Bifurcate and Stay Discovery (DE 25) be DENIED, but that Nationwide be allowed to raise the bifurcation issue again after the close of discovery and ruling on dispositive motions if discovery reveals proof of actual prejudice that Nationwide will suffer.

The Clerk is directed to send a copy of this Report and Recommendation to counsel for Plaintiff and Defendants. NOTICE IS HEREBY GIVEN that within fourteen days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER. *See Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

SO ORDERED.

Entered this 22nd day of June 2015.

s/ Susan Collins  
Susan Collins,  
United States Magistrate Judge